Filed 9/27/16  Hakim v. Beshay CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SUZAN HAKIM,<br><br>        Plaintiff, Cross-Defendant and Respondent,<br><br>        v.<br><br>MAGED BESHAY, et al.,<br><br>        Defendants, Cross-Complainants and Appellants. | B260468<br><br>(Los Angeles County Super. Ct. No. BC419205) |
| MAGED BESHAY, et al.,<br><br>        Plaintiffs and Respondents,<br><br>        v.<br><br>SUZAN HAKIM,<br><br>        Defendant and Appellant. | B265065<br><br>(Los Angeles County Super. Ct. No. BC557681) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County.  Yvette M. Palazuelos and Dalila C. Lyons, Judges.  Judgment in No. B260468 affirmed in part and modified; order on attorney fees and nonstatutory costs affirmed.  Order in No. B265065 reversed and remanded with directions.

Law Offices of Beverly J. Bickel and Beverly J. Bickel for Maged Beshay and MarioMina, Inc.

James S. Link for Suzan Hakim.

_____

Pharmacists Suzan Hakim and Maged Beshay formed MarioMina, Inc. in 2008 to purchase and run a pharmacy, but their relationship rapidly soured, and the parties have been engaged in litigation since 2009.  After securing an advantageous outcome in a prior appeal (*Hakim v. Beshay* (Jan. 13, 2014, B240527) [nonpub. opn.]), on remand Beshay and MarioMina have attempted to deny Hakim compensation for her share of the corporation and to obtain what amounts to a double recovery of funds that Hakim withheld.  Perceiving skepticism on remand, they filed a new, separate action against Hakim.  In Case No. B260468, Beshay and MarioMina's appeal from the court's amended judgment following remand in the original action and its subsequent order denying their motion for attorney fees and nonstatutory costs, we modify the judgment on the conversion claim but otherwise affirm.  In Case No. B265065, we reverse the court's order denying Hakim's special motion under Code of Civil Procedure section 425.16 as to three causes of action in the later-filed lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Beshay and Hakim formed MarioMina for the purpose of purchasing and opening a pharmacy.  According to Beshay, the pharmacy, EO Pharmacy, opened at the beginning of March 2009; and by approximately the second week of that month the parties were already discussing one buying out the other.  The parties were unable to resolve their issues, and in 2009 Hakim sued Beshay and MarioMina, alleging causes of action including breach of contract and dissolution of the corporation.  Beshay and MarioMina cross-complained.  The complaint and cross-complaint were tried separately before Judge Yvette Palazuelos.

2

## I.    Proceedings on Hakim's First Amended Complaint

Hakim contended that on May 5, 2009, she and Beshay agreed that he would buy her 50 percent interest in MarioMina for $60,000. Beshay maintained that no agreement was ever reached and that Hakim remained a 50 percent shareholder in MarioMina.

On January 11, 2011, the jury found that Beshay had breached the contract and determined that Hakim's damages were "$60,000.00, plus her attorney's fees and her court costs." After the verdict, the trial court asked the parties to meet and confer concerning an appropriate resolution to Hakim's remaining equitable cause of action for dissolution of the corporation.

Hakim no longer needed to pursue dissolution of MarioMina in light of the verdict that Beshay had breached the contract. On January 12, 2011, the day after the verdict, Hakim and Beshay agreed to resolve her dissolution cause of action by stipulated order. The stipulation provided that "effective May 5, 2009, Plaintiff Suzan Hakim was not a shareholder, officer or director of Mario Mina, Inc., nor a pharmacist or employee of EO Pharmacy." Although the order (the "stipulated order") did not explicitly dismiss the dissolution cause of action, it appears that the court and the parties considered it a dismissal.

The court signed the parties' stipulated order on February 4, 2011, and on the same day entered judgment in Hakim's favor on the breach of contract claim. The court awarded prejudgment interest and attorney fees, for a total judgment of $110,356.60 entered on June 9, 2011.

Beshay did not pay or bond the June judgment, and Hakim began collection proceedings. She obtained a writ of execution in October 2011, levied Beshay's bank accounts in April 2012, and then applied for an order for sale of his home in December 2011. The record on appeal includes an acknowledgment of full satisfaction of judgment filed in January 2013. According to Beshay, he paid $161,853.27 to satisfy the judgment.

## II. Proceedings on Beshay and MarioMina's First Amended Cross-Complaint

Beshay and MarioMina cross-complained against Hakim for, inter alia, breach of contract and conversion. They alleged that Hakim had fraudulently opened a bank account in MarioMina's name and deposited checks belonging to MarioMina into that account. Although the first amended cross-complaint identified both Beshay and MarioMina as plaintiffs, Beshay was the plaintiff in the breach of contract action and MarioMina was the plaintiff on the conversion claim, and the special verdict form identified the plaintiff for each cause of action accordingly.

On June 30, 2011, after the judgment in Hakim's action against Beshay but before trial on the cross-complaint, Hakim tendered to MarioMina a cashier's check in the amount of $20,052.76, representing $16,782.69 in checks and 10 percent interest, for the checks that she had diverted from the corporation. At trial, Hakim testified that she withheld checks amidst disagreements with Beshay over the buyout and operation of the pharmacy, but that she returned the money to MarioMina once her breach of contract claim was resolved. A copy of the check, the accompanying accounting, and the cover letter were admitted into evidence.

MarioMina did not dispute Hakim's tender of these funds. MarioMina acknowledged the tender prior to trial on the cross-complaint, during arguments outside the presence of the jury during trial, and in closing argument.

The court granted MarioMina a directed verdict on liability for conversion. In closing argument on damages, MarioMina sought the amount of checks plus prejudgment interest, lost profits of $2080 per month from the date of the conversion to June 2011, and $12,750 in damages for Beshay's lost time in attempting to recover the amounts that were converted.

Although the special verdict form asked the jury to determine only what MarioMina's damages were, if any, "for conversion of checks," the jury awarded damages in three specifically identified categories: $16,782.69 for checks, $500 in cash taken on May 9, 2009, and $3,270.07 in interest. In the amended judgment, entered

4

March 13, 2012, MarioMina was awarded the above amounts, plus costs of $2,595.62 and post-verdict interest.

The jury found against Beshay on his breach of contract action against Hakim, concluding that there was a contract between Hakim and Beshay but that Beshay had neither performed his obligations under the contract nor been excused from doing so.

### III. First Appeal, Case No. B240527

A. Breach of Contract Judgment and Order

Beshay appealed the breach of contract judgment, arguing that there was insufficient evidence to support the judgment because there was no evidence the parties had formed a contract. In his opening brief, Beshay contended that the parties had on May 5, 2009, "agreed to nothing except that if they later mutually agreed to a formal buy-out agreement, that Beshay would at that time pay Hakim $60,000 for her interest." As the parties never agreed on a written buyout agreement, he argued, no contract was formed.

At oral argument, counsel for Beshay and MarioMina argued that there had been "a failed negotiation reaching no agreement at all." Therefore, he affirmed, Hakim "is still a shareholder of the business, absolutely. And so she is not without a remedy" if there was no buyout agreement. Counsel represented that Hakim's "remedy is to dissolve the corporation, which she's entitled to do as a 50 percent shareholder. That was never disputed in the underlying trial, that she was a shareholder at the time of the trial . . . ."

It does not appear from our review of the record in Case No. B240527 that any party advised this court of the post-verdict stipulated order providing that as of May 5, 2009, Hakim was no longer a shareholder of MarioMina. The order is not included in the clerk's transcript or the additional documents submitted to augment the record. It was not mentioned in Beshay and MarioMina's opening brief or their reply brief, and it was not addressed at oral argument.

Beshay's argument that there was insufficient evidence that the parties entered into a contract was successful on appeal. This court found "the determination that Hakim

5

and Beshay had entered into an enforceable contract is not supported by substantial evidence." (*Hakim v. Beshay*, *supra*, B240527, p. 7.) We reversed the breach of contract judgment and the attorney fee order, and ordered the trial court to enter judgment in Beshay's favor. (*Id*. at pp. 7, 9.)

### B. Conversion Judgment

Hakim appealed the conversion judgment to the extent that it included post-verdict interest on the entire damages award. She argued that because she tendered prior to trial all but $500 of the damages from the converted checks plus interest, post-verdict interest should only have been assessed on the outstanding $500 she had not tendered. Beshay and MarioMina acknowledged in their briefing that Hakim had mailed a check in the amount of $20,052.76 to their counsel on June 30, 2011.[1] We affirmed the conversion judgment. (*Hakim v. Beshay*, *supra*, B240527, pp. 8-9.)

### IV.    Proceedings on Remand

On remand, the trial court held four hearings over a series of months to establish the appropriate scope and contents of a final judgment consistent with the instructions from this court. Each party submitted multiple proposed judgments and objected to and responded to the proposed judgments filed by the other. Although the parties disputed countless matters, several issues emerged as central questions in the development of a new judgment: what impact, if any, the reversal had on the stipulated order concerning the dissolution cause of action, and what procedural posture the parties were in as a result of the reversal of the breach of contract judgment; whether the judgment should include restitution, costs, and fees in light of the reversal of the breach of contract judgment; and whether the new judgment should include an offset for money tendered by Hakim to MarioMina to compensate for the checks she had withheld.

---

[1]    They represented to the court that they "did not accept it," but provided no citation to the record to support this assertion.

6

A. Arguments of the Parties

1. Issues Pertaining to Reversal of Breach of Contract Judgment

Shortly after the trial court regained jurisdiction over the matter in March 2014, it ordered Beshay to file and serve a proposed judgment. Beshay's attorney filed a proposed judgment that, consistent with his representation to this court that Hakim was and would remain a 50 percent shareholder in MarioMina, included a provision "ordering [the] stipulated order from 2011 to be vacated." Beshay then fired his attorney and retained new counsel, who attempted to cause the trial court to disregard the previously-filed proposed judgment and filed a new proposed judgment that would leave Hakim without an ownership interest in MarioMina, give her no compensation for that interest, and require her to return all money expended in satisfaction of judgment plus costs, further restitution, and interest.

In early briefing Beshay claimed that the Court of Appeal had "made no ruling on whether the contract exists," that the Court of Appeal had held "that there was a contract between the parties but it is not sufficiently enforceable to support a breach of contract claim," and that there was no basis to support Hakim's position that the Court of Appeal "nullified" the contract. He argued that Hakim, having consistently maintained that she had sold her interest in the pharmacy, was now estopped from claiming otherwise. In later briefing Beshay argued that there were actually two contracts between the parties: first an oral contract formed on May 5, 2009, and later a written contract that was unenforceable because it was unsigned. He claimed that Hakim "did not seek to enforce [the oral contract] at trial or on appeal," that she "lost on appeal because she chose to base her claim at trial on an unsigned written contract," and that as a result she was without any remedy and "must live with [the] consequences" of her litigation strategy.

Beshay further argued that Hakim had no interest in MarioMina after the reversal of the judgment because she had stipulated that as of May 5, 2009, she was not a shareholder of MarioMina. He contended that our decision did not "state, or even imply, that Hakim is now a shareholder of MarioMina, Inc.," and that the trial court had no authority to restore Hakim to the position she was in before the original verdict. He

7

asserted that restitution could only be awarded to the prevailing party, and because "Hakim lost on all counts; she gets nothing as a result." Even if restoration or restitution were available to Hakim, Beshay continued, the court could only restore her to the position she was in before the erroneous judgment was imposed; because she had agreed to the stipulated order before the final judgment was entered in March 2012, she was entitled to nothing. Beshay predicted dire consequences if Hakim were restored to her ownership interest in MarioMina, advising the court that he, MarioMina, members of the Beshay family, government agencies, and private insurers had relied on the stipulated order and warning that the pharmacy would be decertified and cease to operate if Hakim were associated with the business again.

Beshay argued that the court should not vacate the stipulated order because Hakim did not timely seek to vacate the order or challenge it on appeal and because there was no basis in the verdict, judgment, appeals, or appellate decision for doing so. He alleged that Hakim wanted the order vacated so that she could undermine the conversion judgment on a theory that as an owner, officer, and director of MarioMina she had authority to take possession of corporate checks. Vacating the stipulated order, he wrote, would "undermine the integrity of the appellate record" and "destroy[] the basis" of this court's opinion on appeal.

Beshay proposed that the court enter judgment in his favor on the breach of contract cause of action and award him costs on that claim. Beshay also argued that because the breach of contract judgment was reversed, the amount that he had paid in satisfaction of that judgment should be returned to him with 10 percent interest. Beshay defended the trial court's power to make a restitution order in a judgment after reversal: "Nothing forbids this Court from providing for restitution in a judgment." He reminded the court that it had "the inherent power to order restitution" after the reversal of a judgment, and urged that it was "proper to include restitution with other remedies in a new judgment after reversal."

Hakim proposed that the judgment state that the judgment on the contract claim, and the associated attorney fee award, had been reversed. She argued that reversal of the

8

breach of contract judgment required the court to vacate the stipulated order. She argued that the court's judgment should not include any provisions for restitution "as that is an entirely separate proceeding." She contended that restitution was not automatic, could be denied when equity so required, and was a matter of the court's discretion.

### 2. Issues Pertaining to Conversion Judgment

On the conversion claim, Hakim proposed carrying forward the original judgment amount, imposing additional post-verdict interest, and deducting the amount that she previously had tendered to MarioMina prior to the initial entry of judgment, for a final amount due to MarioMina of $5,733.90.

MarioMina argued that the conversion judgment should not include an offset for the $20,052.76 Hakim had tendered to MarioMina. MarioMina claimed that this issue had been before the jury but that the jury had not given her credit for this amount. MarioMina also contended that the Court of Appeal's factual recitation that the jury had concluded that Hakim owed MarioMina $20,552.76 constituted a determination that Hakim should not be credited with the amount she had tendered. Therefore, MarioMina argued, to include a credit for the $20,052.76 would contradict the jury's findings and this court's opinion.

### B. July, August, September 2014 Hearings

At the court's first hearing on the post-remand judgment, in July 2014, Hakim argued that as a matter of equity, the reversal required the court to vacate the stipulated order that provided that she was not a shareholder of MarioMina as of May 9, 2009. While this court had not specifically required any action with respect to the stipulation in its instructions on remand, Hakim argued that vacating the stipulation was the only sensible step; if the trial court did not do so, Beshay would end up with all the shares of MarioMina and Hakim would have nothing. Vacating the stipulation, Hakim proposed, would be consistent with Beshay's representation on appeal that Hakim owned a 50 percent interest in MarioMina.

9

With respect to restitution, Beshay argued that he was entitled to restitution of the amount paid to satisfy the now-reversed judgment and the costs he incurred in response to Hakim's efforts to collect on that judgment. He advocated that the judgment should include an order for restitution with a blank line for the exact amount of restitution to be filled in later, similar to the usual procedure for a costs award. Hakim opposed the inclusion of a restitution order in the judgment because restitution was an equitable determination requiring the resolution of issues including the reasonableness of Beshay's claims and Hakim's half-ownership of the corporation. Beshay rejoined that the stipulated order resolved all ownership questions and that he, MarioMina, and others had relied upon that stipulation.

The court proposed addressing restitution in a summary proceeding after the judgment, but Beshay argued that the judgment would only be valid if it reflected all his damages, including restitution. The court offered to amend the judgment once restitution was determined. Beshay explained to the court that he needed the judgment to state that he was owed restitution so that he could commence collection efforts against Hakim concerning the now-reversed judgment, and he complained that she had not yet paid him despite having made "repeated demands." The court observed that Hakim had not paid Beshay because restitution was "still in dispute."

Although the court clarified that it was not ruling that Beshay was not entitled to restitution, only that the issue would be determined in a later summary proceeding, Beshay pressed the court to include an award of restitution with a space for the amount of restitution to be entered in later. The trial court declined this request, explaining that "There's no mention of restitution in the Court of Appeal [opinion]. Restitution may be included at the discretion of the trial court pursuant to a summary proceeding. We have a summary proceeding, and I award restitution. Restitution will go into the judgment. We can amend the judgment and include it, but I'm not going to do that at this point . . . ." The court suggested, and Hakim agreed, that the issue of the amount that Hakim had tendered to MarioMina for the checks she had withheld also could be considered in the later summary proceeding for restitution.

10

The trial court agreed with Hakim that the stipulated order had been contingent on the outcome of the initial trial. The court recalled that it had intended to conduct a separate court trial on dissolution because it was an equitable cause of action, but that once the jury returned the verdict finding that Beshay had breached the parties' contract, it had asked the parties to meet and confer to resolve the claim. The court told the parties, "So it's contingent on the jury verdict that they meet and confer to dispo[se of] this particular claim and the jury verdict is now vacated, it seems to me it affects that stipulation."

Beshay argued that the Court of Appeal's decision did not impact the stipulation, interpreting this court's decision as holding that there was an oral contract between Hakim and Beshay for the sale of her shares; the trial court disagreed. Beshay reasoned that Hakim's claim to an interest in the pharmacy was "a separate issue" that she should have raised as an unjust enrichment or similar claim.

At the second hearing, in August 2014, Hakim continued to maintain that the reversal of the judgment invalidated the stipulated order because the parties had entered into it based on the jury's verdict and so that Beshay could continue to operate MarioMina. Hakim argued she remained a MarioMina shareholder. Beshay argued that vacating the stipulated order would allow Hakim to challenge the conversion judgment by arguing that she had been entitled to take possession of pharmacy checks. Hakim acknowledged that she could not attempt to vacate that judgment.

Hakim advised the court that the result of the reversal was that "they are shareholders again," and the court asked whether it should try the dissolution cause of action. Hakim responded that the case had not been remanded for a new trial, but that Beshay could seek dissolution if he so desired. If either Hakim or Beshay sought dissolution, Hakim observed, MarioMina's value and how the parties should be compensated for their shares would be determined. Beshay argued that if Hakim were restored to her position at the pharmacy, it would be unable to operate. In response, the court told him, "You're stuck with that, is basically what I am trying to say. They [the

11

Court of Appeal] decided they were going to undo it, put you back in the position that you were. If it's undone and then, you know, the chips fall where they do."

Beshay argued that vacating the stipulated order would exceed the court's authority on remand. He argued, "the Court of Appeal says there was a sales contract that was agreed to by the parties." The trial court responded, "It said quite the opposite. There's no contract, undo the whole thing, there's no contract. The Court of Appeal said that for sure." The court did not find persuasive Beshay's claim that the Court of Appeal had ruled that there was an oral contract.

Beshay again argued that Hakim was without recourse because she had not taken action on the oral contract: "[T]hey had an oral agreement. They could have argued this at trial. They didn't. The jury was . . . asked to find an agreement that included the provisions of the written contract. That was where things went afoul, and that was Ms. Hakim's tactical decision to insist on this written instrument that was not signed." "Are you saying that at trial the only thing argued was there was a written contract? That was not argued at trial. I presided over the trial," the court responded to Beshay's attorney. "That's not what happened," said the court.

The court asked, "[I]f you're back in the position that you were, having undone the contract, . . . this court doesn't need to say anything more in its judgment, does it?" Hakim responded that the court needed to vacate the stipulated order as well. Beshay argued that orders relating to the stipulated order were beyond the scope of the Court of Appeal decision and that Hakim should raise the issue "some other time."

Beshay's counsel again told the court that the judgment it was considering would be catastrophic for her clients. The court responded, "I understand that. The other side of the coin is I don't think the Court of Appeal was intending that Ms. Hakim lose all of that interest in the pharmacy basically, that investment just falls off the face of the earth. I don't think they intended that either."

The court urged the parties to discuss settlement and continued the matter for a settlement conference, but the parties were unable to settle They returned to court for a third hearing on September 8, 2014, at which time the court considered Beshay's

12

objections to a proposed judgment submitted by Hakim. Beshay argued that the court's authority to restore parties to their positions before the erroneous judgment extended only to giving restitution to Beshay as the now-prevailing party. The court asked Beshay, "So if the breach of contract [judgment] is undone, then how does the court put the parties back in the position that they were in?" Beshay continued to argue that the Court of Appeal found that there was an oral contract, and the court continued to reject that claim.

Beshay further argued that the court could only restore the parties to their positions immediately before the erroneous judgment, which was entered long after the stipulated order; the court could not restore the parties "to some point in the past before there was any contract between the parties." "The effect of what you are arguing," the court told Beshay, "is your client retains the benefit of a contract that the Court of Appeal has undone. That is the problem. I think it just wouldn't make sense. I think the Court of Appeal would leave it to the trial court to make sure that it effectuates its remand to the court without specifying every little thing that it must do."

Beshay sought a limited judgment that omitted any ruling on the stipulated judgment and advised the court that it had previously ruled that the stipulated order would not be mentioned in the judgment but could be raised by a later motion. Hakim denied that the court had made any such ruling and urged the court to resolve the issue of the stipulated order immediately because restitution could not be determined without knowing whether Hakim was a shareholder in the corporation. Beshay argued, "If there is no restitution to the prevailing party in this judgment, there should not be a restitution to the losing party in this judgment." The court took the matter under submission.

C. Interlocutory Judgment

On September 9, 2014, the court entered an interlocutory judgment. The court entered judgment in Beshay's favor on the breach of contract claim and ordered that he recover attorney fees and costs as provided by law; it vacated the stipulated order. The judgment required Beshay to return to Hakim her shares of MarioMina, if any, and ordered Hakim to return payment, if any, for those shares to Beshay, all to be determined

13

at a subsequent restitution hearing. On the conversion cause of action, the court ordered Hakim to pay MarioMina $17,282.69 in damages plus prejudgment interest up to the time of the verdict, post-verdict interest at 7 percent until entry of judgment, and attorney fees and costs as provided by law. The court set the "restitution/restoration hearing" for October 10, 2014.

D.  New Litigation by Beshay and MarioMina

On September 15, 2014, after the interlocutory judgment but before the restitution hearing, Beshay filed a separate action for restitution against Hakim, Case No. BC557681. Although the new case was also assigned to Judge Palazuelos, it was reassigned when Beshay filed a petition pursuant to Code of Civil Procedure section 170.6. Beshay then requested that Judge Palazuelos refrain from awarding restitution in the original case because he had filed the new lawsuit. Judge Palazuelos declined to do so.

E.  Restitution Hearing

In briefing submitted in advance of the final hearing, Hakim argued that she was entitled to restoration of half the shares of MarioMina. She conceded that Beshay was entitled to restitution in the amount of the original award, $110,356.60, but urged the court not to award Beshay costs he incurred in fighting the enforcement of the judgment, attorney fees, or interest on the award. Hakim suggested that judicial economy would be served by delaying an award of restitution to Beshay until after a trial on the dissolution cause of action, in which the pharmacy and the corporation would be valued. She asked the court not to award restitution to Beshay unless she was restored her shares in MarioMina, because that would constitute taking her shares away from her without any compensation. Hakim admitted that she "cannot know the value of her shares because she has been locked out of the corporation for the last 5 years. However, research on the Internet shows asking prices for pharmacies of roughly the same length of time in business ranging from $325,000 to $925,000." She supplied a declaration detailing her research on pharmacy sale prices and attached pharmacy sale listings in support of her

14

contention that the pharmacy was worth at least twice as much as $110,356.60. Finally, she asked for an offset on the conversion award for the amount that she had tendered to MarioMina during the litigation.

Beshay urged the court not to award shares in MarioMina to Hakim. He continued to assert that the court lacked the authority to make such an order on remand and further advised the court that he believed Hakim had created "a 'judgment-proof' out-of-state spendthrift trust" to avoid reimbursing Beshay for the payments he made pursuant to the original judgment. Beshay also observed that non-party investors now owned 98 percent of MarioMina, so awarding Hakim 50 percent of the business would "rob non-parties who are not before the court." He argued that Hakim owned 500 shares of MarioMina as of May 5, 2009, and that after that date "MarioMina issued 49,000 new shares to non-parties, so her old 500 shares do not equate to a 50% interest. [Citation.] The only way that Hakim can be a 50% owner is to take 25,000 shares from the other owners, or else void all their purchases." Beshay argued that the stipulated order prevented Hakim from interfering with MarioMina's post-stipulation issuance of new shares or voiding any subsequent corporate actions, and that the stipulated order could not properly be disturbed.

Beshay then argued that because he and MarioMina had filed new lawsuits against Hakim and her trust after the interlocutory judgment, the trial court should not award restitution but should leave Hakim to pursue her claim in Beshay and MarioMina's new civil action.

Beshay contested Hakim's estimation of MarioMina's value but failed to present any evidence of its current value. Rather, he argued, age was not the measure of the value of a pharmacy; its value depended on its volume of business, acquired goodwill, and capital assets. Beshay declared that MarioMina's pharmacy had suffered in all these areas due to Hakim's actions; that the pharmacy cost only $70,000 in 2009; and that Hakim's valuation of the business was inflated and incredible. He reiterated his entitlement to fees, costs, and interest on the breach of contract claim, and opposed giving Hakim credit against the conversion damages award.

15

At the hearing, the parties discussed the impact of Beshay's new litigation on the scope of the issues to be decided. Beshay argued that restitution under Code of Civil Procedure section 908 for the amounts he paid on the breach of contract judgment was a distinct issue that should be considered in his new civil action and that the court should limit its present consideration only to whether Hakim was entitled to any MarioMina shares. Beshay advocated that if Hakim had such an entitlement, "those could be recompensed to her in the form of money damages."

Hakim advocated for one of two options: either her shares should be restored to her "in exchange for a payment of the [$]110,000[] monies that were recovered" on the now-reversed judgment; or "if he wants to keep the shares, he wants to keep MarioMina, he wants to continue to lock out Suzan Hakim, it ought to be a wash." The court expressed concern about restoration of the shares: "It seems to me that it wouldn't be prudent to put them together . . . in the business. [¶] . . . They don't want to be together in the business, so it seems to me a buyout of the shares somehow is the best way to go because they don't really want to be together or work together." The court asked the parties to focus on an appropriate amount for a buyout. The court observed that it did not make sense to destroy the ongoing business, but that Hakim deserved to be compensated.

Beshay advanced two ways of calculating compensation, both of which would result in Hakim receiving nothing for her shares. In the first option, the court would start with the purchase price of the pharmacy in 2009 and then deduct corporate expenses since that time, although Beshay proffered no evidence of the amount of corporate expenses incurred. Beshay's second scenario was to consider the present value of the pharmacy. Although Beshay asserted that Hakim's estimate that the pharmacy was worth $400,000 was overestimated, he calculated, using that estimation as a starting point, that her interest would be worth $4,000 because of the dilution of her shares.

Hakim objected to both methods of calculation, arguing that because the current value of her shares was more than the damage amount she had been awarded, a walk-away would be in order. The court observed that Hakim's proposal, would "end[] it for all these parties, and Mr. Beshay could keep the pharmacy and all of its value . . . ."

16

Beshay argued that the $60,000 that the jury awarded as damages represented more than just the value of the business and was in part a reimbursement for corporate expenses, so valuing the shares at $60,000 based on the parties' original buyout figure was incorrect.

Hakim reminded the court of the request for the offset of the amounts tendered against the conversion award, and Beshay again opposed any offset. Hakim also argued that Beshay's expenses in fighting enforcement of the former judgment should not be returned to him.

F. Final Judgment and Post-Judgment Proceedings

The court entered judgment in favor of Beshay on Hakim's cause of action for breach of contract, with Beshay to recover attorney fees and costs as provided by law. Beshay was ordered to either restore to Hakim her shares amounting to 50 percent ownership in MarioMina, in which case Hakim was to pay $110,356.60 to Beshay for the shares; or keep all the shares in MarioMina, in which case Hakim was to retain the $110,356.60 that Beshay had previously paid as payment for her half-interest in MarioMina. On the cross-complaint, Hakim was ordered to pay MarioMina $17,282.69 in damages, pre-verdict interest in the amount of $3,270.07, post-verdict interest at 7 percent until the entry of judgment, and attorney fees and costs as provided by law; and she was credited $20,052.76 against that judgment. The court awarded Beshay and MarioMina $8,497.46 in costs pursuant to Code of Civil Procedure section 685.090.

Beshay and MarioMina filed a motion for attorney fees and nonstatutory costs. Beshay argued that he was entitled to attorney fees because he was the prevailing party on Hakim's breach of contract claim, and MarioMina sought attorney fees on the ground that the conversion claim was related to the contract that Hakim had alleged. Beshay also sought reimbursement of appraisal expenses he incurred in conjunction with Hakim's collection efforts on the now-reversed breach of contract judgment. In conjunction with this motion, they requested that the trial court take judicial notice of documents from other litigation between the parties. The trial court denied the motion and the request for judicial notice.

17

### V. Case No. BC557681

Case No. BC557681 is the case that Beshay and MarioMina, along with other Beshay family members, filed on September 15, 2014, against Hakim and the trustee of her trust. They asserted claims for restitution pursuant to Code of Civil Procedure section 908; fraudulent transfer; conversion; unjust enrichment; a common count of money had and received; judicial estoppel; promissory estoppel; equitable estoppel; declaratory relief; and a temporary restraining order and a preliminary injunction.

Hakim filed a special motion pursuant to Code of Civil Procedure section 425.16 to strike six of the causes of action in the complaint as a strategic lawsuit against public participation (SLAPP). The trial court, Judge Dalila Lyons, granted the motion as to three of the causes of action but denied it as to the causes of action for conversion, unjust enrichment, and money had and received.

### DISCUSSION

We begin our discussion by noting that both in the trial court and on appeal Beshay and MarioMina have unduly complicated this matter by making arguments based upon factual assertions unsupported by the record and legal assertions unsupported by the law. We address only those arguments based on the factual and procedural history of the case and supported by applicable legal authority.

### I. Case No. B260468

This appeal concerns the judgment after our remand. The proceedings in the trial court demonstrate that the court sought to render an equitable decision that was consistent with this court's instructions while taking into account intervening events and the reality that the parties were unwilling to resume business together. Having determined that Hakim was entitled to her 50 percent ownership interest in MarioMina, the court asked the parties to identify a resolution that would end the litigation and the parties' relationship, compensating Hakim for her ownership interest in MarioMina in a way that did not destroy the business. Ultimately, the court offered Beshay a choice: he could either return Hakim's stock to her and receive a refund of the amount that she had been

18

awarded in the original litigation; or he could buy out Hakim's interest by allowing her to keep the $110,356.60 award that he had already paid.[2] Beshay and MarioMina appeal from the judgment and the court's denial of their request for attorney fees and nonstatutory costs. They challenge nearly every aspect of the court's decision on jurisdictional and substantial evidence grounds, as an abuse of discretion, and as inequitable. We conclude that they are judicially estopped from raising many of these arguments and consider the remaining cognizable claims.

### A. Judicial Estoppel and Issues Cognizable on Appeal

This dispute began simply: Hakim said there was a contract for the sale of her half-interest in MarioMina, and Beshay said there was not. Beshay's theory of the case at trial was that no agreement was ever reached and that Hakim remained a 50 percent shareholder in MarioMina. Consistent with this theory, prior to opening argument, Beshay's counsel advised the trial court, "As we sit here today, she's still a shareholder." At the January 2011 trial, Beshay testified that Hakim was a 50 percent shareholder as of May 2009 and remained a 50 percent shareholder "until now." Counsel asked, "[T]o this day Suzan Hakim is a 50 percent shareholder; is that correct?" "Yes," Beshay testified.

Beshay's counsel argued to the trial court, "[T]he evidence is she's still a shareholder, and there's no evidence that the value of her interest at the present time is any different than it's always been." He represented, "She didn't turn over her interest [in the corporation]. She's still a shareholder." Beshay's attorney further argued to the trial court that Hakim had actually improved her position with respect to her investment by not participating in the business of MarioMina since approximately May 2009: "The state of the evidence is she was having to put money in the corporation to keep it afloat, so actually she came out ahead because at the present time, she's a 50 percent shareholder

---

[2]    We are aware that this is the amount of the original breach of contract judgment, not the amount that Beshay claims to have ultimately expended to satisfy the judgment or the amount that he sought in restitution.

without providing any additional investment money into the corporation, and it's all been funded by my client. The value of her stock is actually increased."

In closing argument, Beshay's counsel argued that the parties had tried and failed to reach a buyout agreement, and so "to this day, there's no agreement. The parties anticipated signing a formalized agreement that would be prepared by the lawyer. It wasn't finalized. It wasn't prepared. It wasn't signed. There's no agreement." What should happen now, Beshay argued, was "that this case should end where many of these cases end[,] with the court deciding how to split up what's left of the company, so that she will take what she has, the defendant will take what he has."

The jury found that Beshay had breached the contract. At the instruction of the court the parties met and conferred about the verdict's impact on Hakim's remaining dissolution cause of action, and they reached a stipulation reflecting their common understanding that the issue of ownership of the corporation should be resolved in the context of the jury's determination that Beshay had breached the contract for the sale of Hakim's shares. The parties identified May 5, 2009—the date of the contract found by the jury—as the date that Hakim ceased to be a shareholder, officer, or director of MarioMina. In reliance on the jury's verdict, with this stipulation Hakim changed her position and surrendered her cause of action for dissolution of MarioMina.

On appeal, Beshay sought reversal of the breach of contract judgment on the ground that in May 2009 he and Hakim had not entered into a contract, and so Hakim remained a 50 percent shareholder in MarioMina. In his opening brief, he argued, "[T]here was no buy-out agreement. Beshay cannot be liable for breaching such an agreement, because there was no agreement to breach." He also represented, "There is no substantial evidence to support a finding that the parties had an agreement, at any time, regarding the sale of Hakim's interest to Beshay, other than the oral agreement of May 5, 2009 that upon mutual agreement to a formal written buy-out agreement Beshay would pay Hakim $60,000 for her interest." At oral argument, Beshay's counsel expressly stated that Hakim remained a 50 percent shareholder in MarioMina. Beshay

20

never disclosed the stipulated order to this court or revealed that the parties had changed their positions based on the verdict.

There are two possible interpretations of Beshay's conduct: either he deliberately misled this court or he intended that the stipulated order would be of no effect if Beshay prevailed on appeal. If the first is true, then Beshay obtained a reversal by deception, concealing the fact that the parties had changed their positions based on the verdict and affirmatively misrepresenting the consequences that would flow from a reversal of the judgment by asserting that Hakim would remain a 50 percent shareholder in MarioMina. If the latter explanation is accurate, then Beshay litigated the appeal on the express theory that Hakim remained a 50 percent owner in MarioMina with the understanding that a reversal of the breach of contract judgment would invalidate the stipulated order as well.[3]

In either event, having obtained relief in the Court of Appeal based on the position that there was no contract between Hakim and Beshay and that Hakim remained a 50 percent shareholder in MarioMina, Beshay and MarioMina are judicially estopped from arguing the contrary. Judicial estoppel precludes a party from gaining an advantage by successfully taking one position in a judicial proceeding and then taking a contrary position in a subsequent proceeding when the first position was not the result of ignorance, fraud or mistake. (See *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 [doctrine of judicial estoppel applies when "'(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3)

---

[3] Beshay and MarioMina's initial proposed judgment after remand was consistent with the latter explanation, as it provided that the stipulated judgment would be vacated. Soon after appellants' counsel Michael Brewer filed and served that proposed judgment, Beshay and MarioMina terminated his services. Beverly Bickel, who previously had been listed on filed documents in the case as Brewer's associate, assumed the representation of Beshay and MarioMina, and filed an ex parte application repudiating the proposed judgment prepared by Brewer. She told the court that her clients had been "shocked" to discover that Brewer had included a provision to vacate the stipulated order, and argued that the inclusion of that provision rendered the proposed judgment "seriously at variance" with the Court of Appeal's decision.

the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud or mistake'"].)

Accordingly, Beshay and MarioMina are judicially estopped from arguing that there was a contract, that Hakim is not a 50 percent owner of MarioMina, or that Hakim is not entitled to payment for her half-interest in MarioMina if that interest is not returned to her. We therefore reject Beshay's and MarioMina's arguments that the court lacked jurisdiction to make any award to Hakim; that the court "unwound" or rescinded the contract; that Hakim is not entitled to compensation for 50 percent of MarioMina; that Hakim could not be granted restitution or restoration of her shares, or their monetary equivalent, because she lost on her claims and was not entitled to the property at issue in the litigation; that the award was an abuse of discretion because the court had no power to restore her shares; that the trial court had no power to restore Hakim's shares or their monetary equivalent because she did not own them anymore and/or because she had waived her right to rescission and other remedies; that the court had no discretion to award Hakim MarioMina shares or their monetary equivalent in the exercise of its restorative authority because she entered into the stipulated order prior to entry of the erroneous judgment; that Hakim should not or could not be restored her shares in MarioMina because of parties' and non-parties' reliance on the stipulated order; that Hakim did not own MarioMina shares at the time of the erroneous judgment; that Hakim had ratified the contract with Beshay; that the contract could not be rescinded or unwound because of the stipulated order; that the contract could not be rescinded or unwound after Hakim sued upon it; and that there was insufficient evidence to support a finding that restoration of Hakim's shares required giving her a half-interest in MarioMina.

B. Challenges to the First Option: Restitution to Beshay, Shares to Hakim

Beshay's first option was to return Hakim's 50 percent ownership interest in MarioMina to her; Hakim would in turn return the amount that she had been awarded in

22

the original breach of contract litigation. This constituted a straightforward restoration of the parties to their position before the now-reversed judgment. Hakim remained a half-owner of the corporation, and Beshay would be required to restore that 50 percent ownership interest to her. At the same time, the reversal of the breach of contract judgment meant that Hakim was not entitled to retain the amount previously awarded by the court and paid by Beshay, and she therefore would be required to return to Beshay the $110,356.60 awarded to her in the original judgment.

### 1. The Court Did Award Restitution to Beshay

Beshay repeatedly claims that the trial court did not address or award restitution to him as a result of the now-reversed judgment. On the first page of Beshay and MarioMina's brief, they assert that Beshay was owed statutory restitution pursuant to Code of Civil Procedure section 908 but that the "trial court refused to even mention restitution for Beshay in the new judgment." In their statement of facts, they state that the trial court "ruled that its new judgment would not address restitution to Beshay." In their reply brief, they advance a convoluted argument—based on the false assertion that Beshay did not seek restitution in the trial court—that the court did not rule on restitution to Beshay because the "motion" that was addressed at the restitution hearing was Hakim's motion.

The claim that the court did not rule on the appropriate restitution for Beshay is based on statements taken out of context and is inconsistent with the record, which clearly reflects that the court declined to include a restitution award in its interlocutory judgment with the express intent of addressing restitution in a subsequent hearing. The trial court told Beshay's counsel, "I'm not saying that your client is not entitled to [restitution of the amounts collected in satisfaction of the now-reversed judgment]. I'm just not prepared to make that decision now. Based on the information that I have, I'm not prepared to put it into the judgment. It's the subject of [a] later summary proceeding, and we'll deal with it then. It will be fleshed out in more detail." In the same colloquy,

23

the trial court assured Beshay that "[r]estitution will go into the judgment" and could be added into the judgment at a later time.

Consistent with the court's statements, the interlocutory judgment entered September 9, 2014, specified that Beshay was to return Hakim's shares and she was to return payment for them, "to be determined pursuant to [a] restitution hearing to be set by the court." The court issued a minute order the same day setting the restitution hearing for October 10, 2014. After that hearing, the court entered its final judgment, based upon the Court of Appeal's decision and what it described as the "restoration/restitution hearing in equity," that offered Beshay two options: he could elect restitution or he could choose a buyout to avoid the unwelcome choice of resuming business with Hakim or dissolving the corporation.

The court's first option restored the parties to their prior positions pursuant to its inherent authority and Code of Civil Procedure section 908, and it reflected the court's equitable determination of what was due Beshay and Hakim if the parties were returned to their status prior to the erroneous judgment. The judgment demonstrates that the court fully considered and ruled on Beshay's arguments concerning the restitution owed him.

## 2. Authority of the Court

The court's ruling on restitution was well within the authority of the trial court. The court's judgment resolved the remaining issues in the action in accordance with our prior opinion and within the scope of the remittitur. (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void"].) Code of Civil Procedure section 908 provides that when a judgment is reversed, "the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions

24

of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination." "Although this statutory provision is limited to 'the reviewing court,' a trial court whose order or judgment has been reversed on appeal has inherent authority to afford similar relief." (*Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1065 (*Gunderson*); see also *Schubert v. Bates* (1947) 30 Cal.2d 785, 789 ["the power of a court whose order or judgment has been reversed to order restoration after reversal is inherent in that court"].)

In a conclusory argument, Beshay argues that "[t]he trial court did not award to Beshay the $161,853.27 he paid Hakim in satisfaction of the now-reversed judgment. Accordingly, the trial court was without power to award Hakim anything as restitution or restoration." Beshay does not explain why or how the fact that the court awarded less restitution than he sought deprived it of authority to restore Hakim to her 50 percent ownership of MarioMina, nor does he provide any authority to support his claim. "Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority. [Citation.] If either is not provided, the appellate court may treat the issue as waived. [Citation.] Accordingly, we deem this issue waived." (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743.)

### 3. Effect of the Filing of a Separate Restitution Action

Beshay initially sought restitution from the trial court on remand. He included in his proposed judgment a blank space for the entry of the amount of restitution that he would recover from Hakim, and he argued both that the trial court had "the inherent power to order restitution" after the reversal of a judgment and that it was "proper to include restitution with other remedies in a new judgment after reversal." He advised the court that restitution was part of his damages and asked that the judgment include a statement that Hakim should return all amounts she collected in satisfaction of judgment,

representing to the court that "the sufficiency of a judgment depends on whether it encompasses all issues to be adjudicated."**4**

After the trial court told Beshay, "I don't think the Court of Appeal was intending that Ms. Hakim lose all of that interest in the pharmacy basically, that investment just falls off the face of the earth," and shortly after the court entered its interlocutory judgment specifying that Beshay was to return Hakim's shares and she was to return payment for them, to be determined pursuant to a restitution hearing set for October 2014, Beshay filed his second action against Hakim seeking restitution and other relief. On appeal he claims that trial court lost the authority to award restitution to him or to Hakim at the restitution hearing once he filed his second action.

Beshay is correct that in general restitution after the reversal of a judgment may be sought either in the main action or by the filing of a new action for restitution. (*Gunderson*, *supra*, 196 Cal.App.4th at p. 1065 ["Following reversal, a party may seek restitution from the trial court by a motion 'in the original action itself [citation] or . . . in a separate action instituted for that purpose' [Citation]"].)  None of the authority on which Beshay relies, however, provides support for the argument that once a litigant has sought restitution in the original action, he may later file a new restitution action to be heard by a different judge and thereby divest the original court of the authority not only to resolve his restitution issue already under consideration but also to rule on restitution claims made by other litigants.  Beshay has not established any error.

### 4.  Rescission

Beshay argues that rescission is not available under Civil Code sections 1691, 1692, and 1693 when a party fails to repay money paid as damages or to make any effort to rescind the agreement, and that the trial court therefore abused its discretion in

---

**4**      The parties occasionally took inconsistent positions on remand about the scope of restitution and when and how to resolve restitutionary issues, but these inconsistencies are of no significance because Beshay sought restitution from the trial court and the trial court used its inherent and statutory authority to resolve the restitution issue.

awarding Hakim MarioMina shares or their monetary equivalent "because Hakim already accepted payment of her breach damages and she refuses to return any of it to Beshay." Beshay had no right to the amounts his counsel demanded while the matter was pending before the trial court on remand.[5] That aside, the fundamental problem with this argument is that this case is not an action for relief based upon rescission, nor did Hakim ever seek to rescind the contract she claimed to have had with Beshay and which Beshay successfully argued did not exist. Civil Code sections 1691, 1692, and 1693 have no application here.

### C. Challenge to the Second Option: Sufficiency of the Evidence to Support Valuation

The second option offered by the court to Beshay in the judgment was a walk-away in which he would not return Hakim's 50 percent ownership stake in MarioMina and she would retain the $110,356.60 award as payment for her shares. Beshay challenges the sufficiency of the evidence to support the valuation of Hakim's interest in the corporation at $110,356.60.

We first note that Beshay has failed to satisfy his obligation to present the evidence in favor of the judgment because he failed to set forth Hakim's evidence concerning the value of her interest in MarioMina. A party who challenges the

---

[5] To support his claim that Hakim refused to pay back any of the $161,853.27 she was paid in satisfaction of the original judgment, Beshay cites to: a statement by Hakim's counsel to the trial court that among the equitable issues regarding restitution for the court to resolve was Beshay's demand for "nearly $187,000" after the judgment was reversed, and Beshay's counsel's assertion that the amount they demanded was more than $187,000; another statement by Beshay's counsel that Hakim had not paid them $187,000 plus the levy costs and fees that they were seeking; documents relating to collection efforts and the amount paid by Beshay to satisfy the judgment; the acknowledgment of satisfaction of the original breach of contract judgment; and Beshay's assertion in the trial court prior to the interlocutory judgment that Hakim had not repaid him after the appeal. This purported refusal on Hakim's part was simply her failure to pay Beshay what he demanded while the court was considering how to fashion the final judgment and before the court had made any order as to the amount she should repay him.

27

sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient. (*Diaz-Barba v. Superior Court* (2015) 236 Cal.App.4th 1470, 1485.) "Where a party presents only facts and inferences favorable to his or her position, the 'contention that the findings are not supported by substantial evidence may be deemed waived.' [Citation.]" (*Schmidlin v. Palo Alto* (2007) 157 Cal.App.4th 728, 738.)

Although this deficiency would permit us to reject Beshay's sufficiency of the evidence argument, we will nonetheless address its merits. "'Under the substantial evidence standard of review, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment."' [Citation.] 'All presumptions favor the trial court's ruling, which is entitled to great deference . . . .' [Citation.]" (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 992.)

Beshay's first argument concerning the sufficiency of the evidence concerns business expenses. On the theory that Beshay and Hakim bought the pharmacy for $77,000 in 2009, and that the $60,000 offering price for Hakim's shares in May 2009 represented her $38,500 initial investment plus a reimbursement of business expenses, he asserts that any restoration of her ownership should not include that business expenses component. Business expenses, he argues, would be benefit-of-the-bargain damages that are not available in rescission cases pursuant to Civil Code section 1692. Beshay concludes that the court erred in awarding Hakim any more than the amount she initially paid for the pharmacy purchase. Civil Code section 1692, however, is inapplicable because this case does not involve or concern the rescission of a contract. Moreover, the trial court was determining a present monetary value for MarioMina to provide an option to Beshay to compensate Hakim for her 50 percent interest in the corporation as an alternative to conveying her ownership interest back to her. Beshay's argument about the

28

elements that may have composed Beshay's $60,000 offer to purchase Hakim's shares in 2009 (an offer that did not lead to a contract) does not establish any error in this court's valuation of a present buyout value of her shares.

Beshay's next argument is premised on the assumption that the court's valuation of MarioMina was simply a re-imposition of the reversed breach of contract judgment. He observes that the original judgment included costs and attorney fees, and argues that those cannot be "restored by the court under another name." Beshay, however, has not established that the court awarded Hakim any impermissible costs and attorney fees or that the court erred in valuing her interest in the corporation at a minimum of $110,356.60.

Next, Beshay argues that an assessment of the value of Hakim's half-interest in the corporation should have "incorporate[d] the facts" that (1) Hakim burdened the corporation with debt and litigation, lowering its value, and (2) Hakim is not entitled to the increased value of MarioMina since 2009 because she did not contribute capital or labor to the corporation after that date. To support the first contention, Beshay cites only to his declaration that Hakim's valuation of the company was "not credible" and that MarioMina had suffered "significant losses" due to Hakim's actions, which he characterizes as thefts and unsuccessful litigation. He cites to no evidence in the record supporting his second contention or permitting quantification of the amount to which he claims Hakim was not entitled.

Beshay has not established any error. Even if we accept for the purpose of argument that these factors should have been taken into account, he has not identified any evidence in the record from which a valuation for the corporation and these amounts could be drawn such that it could be determined whether the trial court incorporated or failed to incorporate these factors. The only evidence to which we are directed is Beshay's declaration in which he attacked Hakim's evidence in general terms such as "inflated," and "not credible," and claimed that the pharmacy should be valued not by its

age but by its volume of business, acquired goodwill, and capital assets.[6] Beshay, however, did not offer any evidence that would permit a valuation of the pharmacy's present value based on its volume of business, acquired goodwill, and capital assets or that would demonstrate that valuing the pharmacy on this basis would yield a lesser amount than the amount the court calculated. Nor has Beshay set forth any evidence presented to the trial court delineating particular costs or losses attributable to Hakim or increased value in the corporation that should not be shared with her. Finally, Beshay has not established that the trial court did not consider his valuation arguments, to the extent the court found them valid, in determining the value of the corporation. Hakim presented evidence that similar pharmacies were valued at amounts well over $220,713.20, suggesting that the court may have taken these factors into account when it fixed the value of her half-interest in the corporation at $110,356.60. Beshay has not demonstrated with this argument any diminution of MarioMina's value attributable to Hakim, any increase in value of the company to which she was not entitled that was improperly included in the valuation of her ownership interest, or insufficient evidence to support the court's valuation.

In her respondent's brief, Hakim argued that she presented evidence that the value of the pharmacy was more than twice the $110.356.60 amount selected by the court, and that Beshay did not object to her evidence or provide any evidence to counter hers about the pharmacy's value. In reply, Beshay does not contest Hakim's assertion that he did

---

[6] The relevant portion of Beshay's declaration reads as follows: "Hakim claims that the pharmacy's value can be estimated by age. That is not true. The basis for a pharmacy's value (like any business) is not its age but its volume of business, acquired goodwill, and capital assets. In the case of MarioMina's pharmacy, these have all suffered from significant losses that MarioMina suffered from its start-up, due in major part to Hakim's thefts and unsuccessful litigation which drained the energy and resources of the business's proprietors, and diverted the focus from business to the exhausting job of defending against untrue allegations. Moreover, the pharmacy originally cost only $70,000. Hakim knows how much the pharmacy cost to purchase, and her inflated valuation of it at almost six times its value in 2009 is not credible."

not object to Hakim's valuation evidence. He argues only that he countered her evidence with his declaration, but as discussed above this declaration is insufficient to establish any error.[7] Beshay also asserts that his "statement that the pharmacy was worth about $70,000 at [the] time of purchase is mirrored" in our earlier opinion, in which we set forth the purchase price of the pharmacy in the factual and procedural summary. Neither Beshay's nor our recitation of the purchase price of the pharmacy in 2009 suggests or establishes that there was insufficient evidence to support the court's valuation of Hakim's present interest in MarioMina for purposes of the buyout option.

Finally, Beshay argues that his assertion of the pharmacy's value is "more credible" than Hakim's evidence because he runs the corporation as an officer and director while Hakim left the business in 2009. We neither reweigh the evidence nor make credibility determinations on appeal. "It is not our function as a reviewing court to reweigh the evidence, resolve conflicting evidence and inferences, or to judge the credibility of the witnesses." (*Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 806.) "When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the finder of fact. [Citation.] We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have supported a different result. [Citation.]." (*Canister v. Emergency Ambulance Service* (2008) 160 Cal.App.4th 388, 394.)

### D. Credit Against the Restitution Award

In the prior appeal, we affirmed MarioMina's conversion judgment against Hakim without directions. (*Hakim v. Beshay*, *supra*, B240527, p. 9.) On remand, as part of the final judgment the trial court ordered that the amount Hakim owed MarioMina for the conversion of MarioMina's checks be offset by the amount that she had already paid to MarioMina for the converted checks and interest on those checks. It is evident that the

---

[7] Beshay provides one additional citation to the record to support his assertion that he submitted evidence to counter Hakim's evidence, but this citation is to argument at the trial court, not evidence in the record.

trial court incorporated this offset against the conversion judgment to prevent MarioMina from obtaining a double recovery.  All parties have acknowledged that Hakim paid MarioMina $20,052.76 for the checks that she had retained and interest on the amount withheld; it would be inequitable for MarioMina to retain that payment and also recover that amount in damages for the conversion of the checks.[8]  A "[p]laintiff is only entitled to a single recovery of full compensatory damages for a single injury." (*Milicevich v. Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1003.)

In altering the conversion judgment after it was affirmed, however, the trial court exceeded its jurisdiction.  "An unqualified affirmance ordinarily sustains the judgment and ends the litigation.  The respondent can enforce the judgment, the trial court cannot modify it, and further proceedings are improper." (*Los Angeles Unified School Dist. v. Wilshire Center Marketplace* (2001) 89 Cal.App.4th 1413, 1424; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 853.)

While the trial court could not offset the judgment by crediting Hakim for her prior payment of $20,052.76 to MarioMina, upon proof that she made this payment Hakim is entitled to an acknowledgement of partial satisfaction of judgment from MarioMina, and if it refuses to acknowledge the partial satisfaction of the judgment she is entitled to an order compelling that acknowledgment on proof of payment.  (Code Civ. Proc., §724.110; *Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1048 [court may exercise its equitable discretion to apply a settlement credit in partial satisfaction of judgment even though the credit was not brought to the court's attention before the entry of judgment]; *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753 [motion to compel

**8**    All of MarioMina's arguments that the jury, the trial court, or this court rejected Hakim's theory that she was entitled to an offset for the funds she paid MarioMina, or that it cannot be determined whether the jury's damages award actually took this payment into account, are contradicted by the record.  It was undisputed in the original trial court proceedings that Hakim had tendered these funds to MarioMina:  Beshay and MarioMina acknowledged the tender prior to trial on the cross-complaint, during arguments outside the presence of the jury during trial, and in closing argument.

acknowledgment of satisfaction or partial satisfaction of a judgment "is an entirely acceptable procedure for seeking an offset against a judgment"].) As MarioMina argued to the trial court during trial, Hakim's tender of funds during litigation did not eliminate its damages or establish a defense to the conversion claim, but was "really satisfaction of a judgment in the event that the jury comes back and awards those damages because the money would have already been paid. [¶] So if th[e jurors] come back and they say the amount she tendered is the amount of damage then that's the amount—the judgment essentially would have been satisfied . . . ."

### E. Equity

In an argument that appears to address the judgment as a whole, Beshay and MarioMina contend that the court abused its discretion in making any equitable award to Hakim because she had not done equity herself. Although they claim that Beshay was entitled to retain Hakim's MarioMina shares and to receive every penny paid on the now-reversed judgment, all that he paid fighting the execution of that judgment, and interest; and that MarioMina should retain Hakim's reimbursement for the checks she withheld and also receive the damages award that the jury made for those checks, in their view it is Hakim who has not done equity. This is because Hakim "refuses to satisfy MarioMina's judgment against her [on the conversion claim], and has never repaid Beshay any of the $161,853.27 he paid Hakim in satisfaction of the now-reversed judgment."

This argument has no merit. Beshay and MarioMina's evidence to support their claim that Hakim has behaved inequitably consists of three citations to the record that show only that they demanded money from Hakim while the post-remand hearings were ongoing and that she did not pay them. Moreover, the record shows that Hakim did not contest that the judgment on remand should incorporate the damages award to MarioMina on the conversion cause of action: From the first judgment Hakim proposed on remand she included the jury's conversion damages award. Hakim did ask for an offset for the amount that she had already tendered to MarioMina, and there was debate

33

about the dates to be used for interest calculations, but she did not dispute that she was responsible for paying MarioMina any outstanding amount due for conversion.

Beshay and MarioMina have also failed to show that Hakim engaged in inequitable conduct with respect to the restoration of the damages award due to the reversal of the breach of contract cause of action. Immediately after regaining jurisdiction, the trial court began the process of determining what the parties owed each other in light of our decision and remand. During that time, the question of how much Hakim should pay Beshay was actively litigated. We have not located any instance in the record of Hakim denying that she was responsible for repaying Beshay in light of the reversal, nor have Beshay and MarioMina identified any such statement in the record. To the contrary, Hakim conceded that Beshay was entitled to restitution in the amount of the original award, $110,356.60, but she urged the court to limit the amount of restitution to the original judgment amount because Beshay, not Hakim, was responsible for the additional expenses that he incurred after the judgment was entered. Beshay and MarioMina have not provided any authority for their view that equity requires one party to pay another party whatever amount the second party claims to be entitled to while the question of what amount should be ordered remains pending before the court.

F. Denial of Beshay and MarioMina's Motion for Attorney Fees and Their Request for Judicial Notice

Beshay and MarioMina filed a motion for attorney fees and nonstatutory costs. In conjunction with this motion, they filed a request for judicial notice of pleadings in other litigation involving Hakim and Beshay. The trial court denied Beshay's attorney fee request on the ground that this court's prior opinion had established that Hakim was not entitled to attorney fees, a determination equally binding on Beshay. The court rejected MarioMina's contention that it was entitled to attorney fees because it was based on the fee provision in the unsigned contract, which, "according to the Court of Appeal, is not applicable to this dispute." The trial court denied their request for judicial notice. Beshay and MarioMina appeal.

34

### 1. Attorney Fees Under Civil Code Section 1717

Beshay and MarioMina contend that they are entitled to attorney fee awards under Civil Code section 1717. Hakim did not allege in her operative complaint that the parties' oral contract provided for attorney fees, nor did she produce evidence that the parties agreed to or even considered an attorney fee provision when they reached their alleged purchase agreement. On its own, however, the jury decided that Hakim's damages included attorney fees. It was only after the jury made this finding, unsupported by evidence at trial, that Hakim took the position that she was entitled to attorney fees. On appeal, we observed that Hakim "had alleged in her complaint Beshay had breached their *oral* contract, and made no mention of attorney fees, let alone any basis for such an award." (*Hakim v. Beshay*, *supra*, B240527, p. 7, fn. 1.) We held that Hakim "was not entitled to attorney fees based on a writing to which the parties never agreed." (*Hakim v. Beshay*, *supra*, B240527, p. 7.) Because Hakim was not entitled to attorney fees on the contract she litigated even if she had ultimately prevailed, neither Beshay nor MarioMina is entitled to attorney fees pursuant to Civil Code section 1717. A party is only entitled to attorney fees under Civil Code section 1717 "'if the other party would have been entitled to attorney's fees had it prevailed.' [Citations.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.)

### 2. MarioMina's Contract-Based Fee Request

MarioMina also contends that it is entitled to an award of attorney fees on its conversion claim pursuant to Code of Civil Procedure section 1021 and the attorney fee provision of the contract between Beshay and Hakim. MarioMina contends that it was a party to the contract and is therefore entitled to avail itself of the contractual attorney fee provision, but this appears to be a post-litigation theory: the jury determined that Beshay and Hakim entered into a contract, but never determined that MarioMina was a party to the contract, nor was it asked to do so. MarioMina asserts in the alternative that it was entitled to a fee award because it was a third-party beneficiary of the alleged contract, and it offers, without explanation, a citation to one legal decision that sets forth the test for determining whether a contract was made for the benefit of a third party. MarioMina,

however, offers no argument as to how that test was satisfied here, nor does it identify any factual basis in the record to support such its conclusion. "We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis." (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814.)

### 3. Nonstatutory Expenses

Beshay claims that the trial court erred when it failed to award him appraisal expenses. His entire argument on this point is that the contract's fee provision authorized recovery of expenses by the prevailing party, he incurred expenses, and he was entitled to recover these expenses. "This is no legal analysis at all. It is simply a conclusion, unsupported by any explanation . . . . Hence, appellant has forfeited the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 410.) "[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived." (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448.) Beshay has not demonstrated any error in the trial court's denial of his request to recover his appraisal fees.

### 4. Collection Fees

Beshay and Hakim also claim that as judgment creditors they are entitled to fees incurred in collecting on the judgment against Hakim pursuant to Code of Civil Procedure section 685.040. Their entire argument about this claimed entitlement consists of this assertion, a citation to a single case, and the observation that the trial court denied their request. An appellant must offer argument as to how the court erred, rather than citing general principles of law without applying them to the circumstances before the court. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699.) "A reviewing court need not consider alleged error when the appellant merely complains of it without pertinent argument." (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1090.) Beshay and MarioMina have not established any error.

5. Request for Judicial Notice

Finally, Beshay and MarioMina appeal from the trial court's denial of their request for judicial notice of documents from other litigation, arguing under Evidence Code section 452 they "were entitled to mandatory judicial notice." They are incorrect. "Although a court may judicially notice a variety of matters (Evid. Code, § 450 et seq.), only *relevant* material may be noticed. 'But judicial notice, since it is a substitute for proof [citation], is always confined to those matters which are relevant to the issue at hand.' [Citation.] 'While Evidence Code, section 451, provides in mandatory terms that certain matters designated therein must be judicially noticed, the provisions contained therein are subject to the qualification that the matter to be judicially noticed must be relevant (Evid. Code, §§ 350, 450)', as well as 'qualified by Evidence Code, section 352. . . .' [Citations.]" (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 (*Mangini*), partially overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.) The same principles hold true for judicial notice under Evidence Code section 452. Like any court, the trial court may "'decline' to judicially notice material that 'has no bearing on the limited legal question at hand.' [Citation.]" (*Mangini*, at p. 1063.) Beshay and MarioMina were not entitled to mandatory judicial notice of these documents.

### G. Beshay and MarioMina's Request for Judicial Notice and Second Motion to Augment the Record

On February 10, 2016, Beshay and MarioMina filed with this court a request for judicial notice and a second motion to augment the record on appeal. We deny the request for judicial notice as to Exhibit 1, a death certificate for Beshay and MarioMina's first attorney, on the ground that it is irrelevant. (*Mangini*, *supra*, 7 Cal.4th at p. 1063.) We deny the request for judicial notice of Exhibits 2 through 5 because it is unnecessary to judicially notice items that are already part of the record on appeal.

Beshay and MarioMina submitted the documents with the second motion to augment to support arguments in their reply brief concerning the availability of appeal

bonds or undertakings and the legitimacy of Beshay's actions in defending against Hakim's collection efforts on the now-reversed judgment. As our resolution of this appeal does not require consideration of these issues, we deny the second motion to augment. (*Kalmus v. Kalmus* (1950) 97 Cal.App.2d 74, 77 [augmentation decision is within the discretion of the appellate court].)

## II. Case No. B265065

Code of Civil Procedure section 425.16, subdivision (b)(1) provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

38

Code of Civil Procedure "[s]ection 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) We review the court's ruling de novo. (*Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242, 1251.)

A. Constitutionally Protected Activity

Hakim appeals the denial of her special motion to strike with respect to the causes of action for conversion, unjust enrichment, and money had and received. These causes of action are all claims that Hakim acted wrongfully by participating in litigation to determine the amount of money she should repay Beshay after the reversal of the breach of contract judgment. Beshay and MarioMina alleged that Beshay paid Hakim after judgment was entered in the breach of contract action "in satisfaction of judgment with the understanding that the money would be returned if that judgment were reversed." They alleged that beginning on January 13, 2014 (the date we filed our opinion in the prior appeal), Hakim was obligated to immediately return all sums Beshay had paid, and that she knew "that once the judgment against [Beshay] was reversed by the Court of Appeals [*sic*] on January 13, 2014, such payments rightfully belong[ed] to the Plaintiffs and should have been returned to them." Hakim, Beshay alleged, "wrongfully interfered" with his right to possession of the amount of the judgment and she "took wrongful action" to prevent him from collecting it.

39

It is clear from a review of the complaint in the context of the procedural history of this dispute[9] that the gravamen of the complaint is Hakim's pursuit of her legal right to have the court determine the amount of money owing to Beshay, if any, as a result of this court's decision on appeal. Her allegedly wrongful conduct was failing to pay Beshay the amounts he demanded immediately, before our opinion was final; before her petition for rehearing had been ruled upon by this court; before the trial court regained jurisdiction of the action; and while the question of what amount would be ordered by the trial court to restore the parties to the positions they had occupied prior to the now-reversed judgment was pending before the trial court and being litigated by the parties. The action was filed mere days after the court filed its interlocutory judgment and set the "restitution/restoration hearing" for October 10, 2014, in conjunction with which Beshay was invited to submit briefing concerning restitution to him.

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier*, *supra*, 29 Cal.4th at p. 92.) Engaging in litigation to arrive at a judicial resolution of the remaining issues in the underlying action, including what sums, if any, Hakim was required to pay in restitution as a result of the reversal of the judgment, necessarily involved "statements[s] or writing[s] made before a . . . judicial proceeding." (Code Civ. Proc. § 425.16, subd. (e)(1)see *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759 [the filing of lawsuits is an aspect of the right of petition, and "a

---

[9] Many of the documents in the underlying case were judicially noticed by the trial court in ruling on the anti-SLAPP motion. As the two appeals are related to each other, are being considered together, and are fundamentally intertwined, on our own motion we take judicial notice of the records in Case No. B260468. (Evid. Code, § 452.)

40

claim based on actions taken in connection with litigation fall[s] 'squarely within the ambit of the anti-SLAPP statute's "arising from" prong'"].)**10**

B.     Probability of Success

Once the moving party demonstrates that a cause of action is based on constitutionally protected activity, the plaintiff must then demonstrate a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1).)  Admissible evidence in support of the plaintiff's prima facie case must be presented on each element of the challenged causes of action.  (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614.)

Here, Beshay and MarioMina did not demonstrate a probability of prevailing on their claims because the litigation privilege, codified at Civil Code section 47, subdivision (b), creates an absolute privilege that "'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'  [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)  The privilege, which exists for the "purpose of curtailing derivative lawsuits" (*ibid*.), "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)  "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Id*. at p. 1058.)  The pleadings and process in a case are generally considered to be privileged communications.  (*Ibid*.)  As the "wrongful action" Hakim is alleged to have committed to prevent the money being collected by Beshay was the manifestly communicative act of filing briefing and making

---

**10**     Whether Code of Civil Procedure section 425.16 would necessarily be implicated whenever a party filed a new action seeking restitution under Code of Civil Procedure section 908 and/or the court's inherent authority to restore their parties to their prior positions after the reversal of an erroneous judgment is an issue that arose in oral argument but that need not be resolved here, because the parties litigated the question of how to restore the parties to their original positions before the trial court on remand.

arguments to the court, the litigation privilege applies here and is a complete defense to Beshay and MarioMina's causes of action. (*Ibid.*) Beshay and MarioMina cannot show a probability of success on the merits on these claims.

## DISPOSITION

In Case No. B260468, the judgment for conversion is modified to strike the credit for $20,052.76. In all other respects the judgment is affirmed. The order on the motion for attorney fees and nonstatutory costs is affirmed. Hakim shall recover her costs on appeal.

In Case No. B265065, the order denying the special motion to strike is reversed, and the matter is remanded with directions to enter judgment in favor of Hakim on the third, fourth, and fifth causes of action. Hakim shall recover her costs and attorney fees on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

GARNETT, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

42